## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Latesha Shanté Murphy, | |
| Plaintiff, | Civil No. 3:23-cv-01552 (KAD) |
| v. | |
| Federal Savings Bank, *et al.*, | September 23, 2024 |
| Defendants. | |

## <u>RECOMMENDED RULING</u>

### I. INTRODUCTION

This is a lawsuit filed by Latesha Shanté Murphy, proceeding *pro se*, against Federal Savings Bank ("FSB") and Dovenmuehle Mortgage, Inc. ("Dovenmuehle"), a mortgage servicer on behalf of FSB.  Ms. Murphy apparently contends in her amended complaint that FSB and Dovenmuehle violated both the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*  (ECF No. 12, at 2.)  The plaintiff also makes a common law claim for the equitable remedy of rescission with respect to a settlement agreement with FSB in a foreclosure lawsuit in the Connecticut Superior Court.  (*Id.* at 1-2.)  United States District Judge Kari A. Dooley referred the case to me – United States Magistrate Judge Thomas O. Farrish – to assess whether Ms. Murphy properly invoked the court's subject matter jurisdiction.  (ECF No. 13.)

Having thoroughly reviewed the amended complaint with respect to subject matter jurisdiction, I conclude that the Court has so-called "federal question" jurisdiction over the TILA and RESPA claims but does not have jurisdiction over the common law rescission of settlement claim.  Accordingly, I do not recommend that Judge Dooley dismiss the TILA and RESPA claims

1

for lack of subject matter jurisdiction.  I do, however, recommend dismissal of the common law rescission claim.

## II. BACKGROUND

The Court construes the amended complaint to state that Ms. Murphy took out a loan to pay for her New Haven, Connecticut home.  (ECF No 12, at 1.)  The loan was secured by a mortgage on the home.  (*Id.*)  At some point, FSB alleged that Ms. Murphy had defaulted on the loan, and it sued to foreclose.  (*Id.*)  The foreclosure suit, according to Ms. Murphy, was eventually settled for $25,000.  (*Id.*)  She subsequently filed this lawsuit, contending that the foreclosure proceedings were unlawful, and that the settlement should be unwound.  (*Id.*)

In her original complaint in this case, Ms. Murphy claimed that PHH Mortgage Servicers wrongly sued her for "mortgage payments on a loan that no longer exists."  (ECF No. 1, at 1.)  Believing this conduct to be criminal, she filed a "notice of felony case" in this court.  (*Id.*)  She also moved for leave to proceed *in forma pauperis* ("IFP"), that is, without paying the filing fee. (ECF No. 8.)

Judge Dooley referred the case to me to (1) review the plaintiff's financial affidavit and determine whether she is unable to pay the fee pursuant to 28 U.S.C. § 1915(a), and (2) examine her complaint to determine whether it was "frivolous" or "fail[ed] to state a claim on which relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).  (ECF No. 9.)  I recommended that Judge Dooley deny the IFP motion because Ms. Murphy had not shown an inability to pay the filing fee. *Murphy v. PHH Mortg. Servicers*, No. 3:23-CV-01552 (KAD), 2024 WL 2864218, at *1 (D. Conn. Jan. 23, 2024).  I also recommended that Judge Dooley dismiss the complaint without prejudice to an amended civil complaint because, among other reasons, Ms. Murphy had not properly invoked the court's subject matter jurisdiction.  *Id.*  Judge Dooley approved and adopted my recommended

ruling and afforded the plaintiff the opportunity to file an amended complaint addressing, among other things, the court's subject matter jurisdiction.  (ECF No. 11.)  The plaintiff then paid the $405 filing fee and filed a document that Judge Dooley construed as an amended complaint.  (ECF No. 12, 13.)  Judge Dooley subsequently referred the amended complaint to me "for the limited purpose of assessing whether Plaintiff has now properly invoked the court's subject matter jurisdiction."  (ECF No. 13.)

III. DISCUSSION

      A. Plaintiff's Claims

      To assess whether Ms. Murphy has properly invoked the court's jurisdiction, I will begin by identifying the legal claims that she makes in her amended complaint.  "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).  In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).  Because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).  Because Judge Dooley has only referred this case to me to assess whether Ms. Murphy properly invokes the court's subject matter jurisdiction, this recommended ruling should not be read as evaluating whether the amended complaint is "frivolous" or "fails to state a claim."  28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) ("[T]he court

3

shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted[.]").

Construed liberally, I observe three attempted claims in Ms. Murphy's amended complaint. The first claim, which Ms. Murphy expressly states, is pursuant to TILA, a federal law that promotes the informed use of credit. TILA "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights," *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004), including "notice of the borrower's right of rescission." *Fiorenza v. Fremont Inv. & Loan*, No. 1:08-CV-858 (SAS), 2008 WL 2517139, at *2 (S.D.N.Y. June 20, 2008) (*citing* 12 C.F.R. § 226.23(b)(1)). In certain circumstances, the right of rescission provides the borrower the ability to "rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998). In her amended complaint, Ms. Murphy contends that, in violation of 15 U.S.C. § 1635(a), information with respect to her "[r]ight of [r]escission was never provided" to her by FSB. (ECF No. 12, at 2.) She further contends that FSB violated § 1635(b) by not "returning all funds paid on the loan" after she "lawfully rescinded" the transaction "via a [n]otice of [r]escission." (*Id.* at 2-3.)

Ms. Murphy's second claim is pursuant to RESPA, "a consumer protection statute that provides a mechanism for regulating the real estate settlement process[.]" *Garrasi v. Selene Fin., LP*, 407 F. Supp. 3d 110, 116 (N.D.N.Y. 2019) (*quoting Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012)) (internal quotation marks omitted). Under RESPA, if any "entities or persons responsible for servicing federally regulated mortgage loans" fail to comply with a provision, that entity or person "shall be liable to the borrower for each such failure[.]" *Id.* One such provision requires that "[e]ach servicer of any federally related mortgage

4

loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."  12 U.S.C. § 2605(b)(1).  In her amended complaint, Ms. Murphy appears to contend that her mortgage was assigned "without [her] knowledge and consent," in violation of 12 U.S.C. § 2605(b)(1).  (ECF No. 12, at 1.)

The third claim in Ms. Murphy's amended complaint appears to be for the equitable remedy of rescission.  (*Id.* at 1-2.)  In Connecticut, "there are two types of remedies available to a plaintiff who has been fraudulently induced to enter a transaction: 'rescission of the underlying contract and restitution[.]'"  *Doe v. Hotchkiss Sch.*, No. 3:22-CV-1088 (VAB), 2024 WL 3718342, at *18 (D. Conn. Aug. 7, 2024) (*quoting Leisure Resort Tech., Inc. v. Trading Cove Assoc.*, 277 Conn. 21, 32 (2006)).  "Rescission, simply stated, is the unmaking of a contract."  *Sylvia v. Kensington Auto Serv., Inc.*, No. 3:20-CV-01622 (KAD), 2021 WL 2634502, at *4 (D. Conn. June 26, 2021) (*quoting Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989)) (internal quotation marks omitted).  "It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract."  *Id.*  In this case, Ms. Murphy contends that the foreclosure lawsuit filed by FSB against her was "unlawful" because FSB was not the holder in due course of the loan.  (*Id.* at 1.)  She therefore claims that the settlement should be rescinded and the $25,000 that she paid to settle the lawsuit should be returned to her.  (*Id.*)  I will now turn to whether the court has subject matter jurisdiction over these three claims.

B. Subject Matter Jurisdiction

Federal courts are courts of "limited jurisdiction," meaning that they cannot hear just any case.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Leaving aside some others that are not relevant here, a federal court can typically adjudicate only three types of claims:

(1) those that "aris[e] under the Constitution, laws, or treaties of the United States" – so-called "federal question" jurisdiction under 28 U.S.C. § 1331; (2) disputes between citizens of different states, where the amount in controversy exceeds $75,000 – "diversity jurisdiction" under 28 U.S.C. § 1332; and, under certain circumstances, (3) other claims that are "so related" to an "original jurisdiction" claim that they "form part of the same case or controversy under Article III of the United States Constitution" – "supplemental jurisdiction" under 28 U.S.C. 1367(a).

When the plaintiff's complaint is not the sort of complaint that the court is empowered to hear, dismissal is required. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) (per curiam) ("Where jurisdiction is lacking ... dismissal is mandatory.") (internal quotation marks omitted); *State of Conn. v. Levi Strauss & Co.*, 471 F. Supp. 363, 372 (D. Conn. 1979) (declining to hear case because "[n]either federal question nor diversity jurisdiction is properly invoked"). Moreover, when subject matter jurisdiction is lacking, the complaint must be dismissed even if it was drafted by a *pro se* plaintiff. *See, e.g.*, *Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999); *cf. Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (placing the burden of proving subject matter jurisdiction on the *pro se* plaintiff). In other words, while *pro se* complaints are reviewed liberally, that liberality does not stretch so far as to cause a court to hear a case that is outside its jurisdiction. *Cf. Makarova*, 201 F.3d at 113; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (concluding that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (internal quotation marks omitted). When reviewed liberally, Ms. Murphy's amended complaint seeks to invoke the court's diversity jurisdiction, federal question jurisdiction, and supplemental jurisdiction. Accordingly, the Court will discuss each in turn.

1. Diversity Jurisdiction

Under 28 U.S.C. § 1332, diversity jurisdiction does not exist unless two principal requirements have been met. The first is that the "matter in controversy" must exceed "the sum or value of $75,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(a).  In the context of this case, the second is that the dispute must be "between . . . citizens of different States[.]"  *Id.*  The party seeking to invoke diversity jurisdiction – in this case, Ms. Murphy – bears the burden to show that both requirements have been satisfied.  *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) ("The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

To show that a dispute is between citizens of different states, a plaintiff must allege different facts depending on the type of citizen involved.  "[A] national bank is a citizen only of the state listed in its articles of association as its main office."  *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016).  A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The corporation's "principal place of business" is "the place where the corporation's high level officers direct, control, and coordinate [its] activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).  A natural person "is deemed a citizen of the state wherein . . . she is domiciled."  *Universal Reins. Co. v. St. Paul Fire & Mar. Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

A person's state of domicile is not necessarily her state of residence.  "Domicile has been described as the place where a person has '[her] true fixed home and principal establishment, and to which, whenever [she] is absent, [she] has the intention of returning.'"  *Linardos*, 157 F.3d at

948 (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3612, at 526 (2d ed. 1984)).  Conversely, "a person may have a residence in a place in which . . . she intends to live only temporarily." *Gross v. Rell*, 485 F. Supp. 2d 72, 77 (D. Conn. 2007).  Of course, a person's domicile and her residence "typically coincide." *Windward Bora LLC v. Browne*, 110 F.4th 120, 124 n.5 (2d Cir. 2024) (quoting 13E C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3612, at 527 (3d ed. 2009)).  Nevertheless, "[d]omicile and residence are not synonymous," *id.*, and "a party can reside in one place and be domiciled in another." *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47-49 (1989)), *aff'd*, 406 F. App'x 507 (2d Cir. 2010).

In this case, Ms. Murphy's amended complaint does not allege facts sufficient to satisfy the diversity-of-citizenship requirement.  With respect to her own citizenship, Ms. Murphy says that she "resides and owns property in the state of Connecticut," but does not say where she is domiciled.  (ECF No 12, at 1.)  With respect to FSB, she says that it is "registered in the [s]tate of Illinois," but does not say the "state listed in its articles of association as its main office." (*Id.*)  Ms. Murphy also alleges that Dovenmuehle is registered in Illinois, but she does not say where it is incorporated nor where it has its principal place of business.  (*Id.*)  These allegations do not suffice to satisfy § 1332(a)'s requirement that the dispute be between citizens of different states.  Accordingly, Ms. Murphy's case does not implicate the court's diversity jurisdiction.

2. Federal Question Jurisdiction

Federal courts have federal question jurisdiction when the action "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In order "to determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the

complaint." *Bank of New York v. Consiglio*, No. 3:17-CV-01408 (CSH), 2017 WL 9480197, at

*4 (D. Conn. Oct. 2, 2017) (*quoting Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)),

*report and recommendation adopted*, 2017 WL 4948069 (D. Conn. Nov. 1, 2017).  As discussed

above, the Court construes Ms. Murphy's amended complaint to seek relief under two federal laws

– TILA and RESPA.  Although there may be issues with the pleading of these claims, Judge

Dooley referred this case to me to assess only whether Ms. Murphy properly invokes the court's

subject matter jurisdiction, and none of the possible issues are jurisdictional defects.  To find a

jurisdictional defect, "Congress must provide a clear indication that it wants a rule to be

jurisdictional before [courts] may recognize it as being jurisdictional," and "even rules that are

important and mandatory should not be given jurisdictional brand unless Congress has clearly

indicated otherwise." *Negron v. Patriot Auto Sales, LLC*, No. 3:17-CV-00583 (JCH), 2019 WL

13215539, at *5-6 (D. Conn. May 7, 2019) (*quoting City of New York v. Mickalis Pawn Shop,

LLC*, 645 F.3d 114, 126-27 (2d Cir. 2011)), *aff'd sub nom. Negron v. Winer*, 797 F. App'x 660 (2d

Cir. 2020) (internal quotation marks omitted).  There is no such indication with respect to Ms.

Murphy's TILA and RESPA claims.  Accordingly, the Court has jurisdiction over both federal

claims.  *See Figueroa v. HSBC Bank USA, N.A.*, No. 1:16-CV-0893 (LEK), 2017 WL 1185263, at

*1 (N.D.N.Y. Mar. 29, 2017) (concluding that "it is clear from the face of the Complaint that

federal question jurisdiction exists in this case" where the plaintiff alleged violations of TILA and

RESPA).

### 3. Supplemental Jurisdiction

Finally, because Ms. Murphy's third claim is a common law rescission claim that does not

present a federal question, the Court must assess whether it has supplemental jurisdiction over the

claim; that is, whether the court can still hear the claim even if it does not invoke diversity

jurisdiction or federal question jurisdiction.  28 U.S.C. § 1367 provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Put differently, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding.'"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (brackets omitted).  "In deciding whether two disputes arise from a common nucleus of operative fact, courts have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court."  *Jafri v. Town of New Canaan*, No. 3:21-CV-00963 (KAD), 2022 WL 344230, at *2 (D. Conn. Feb. 4, 2022) (internal quotation marks omitted).

With these standards in mind, the court concludes that it is without supplemental jurisdiction to adjudicate the rescission of settlement claim.  The federal claims arise from a loan transaction that took place in 2020.  (ECF No. 1, at 25.)  The common law claim arises from a 2022 state court settlement agreement.  (ECF No. 12, at 1.)  There is no discernible "common nucleus of operative fact" between FSB's conduct in settling a state foreclosure case and the conduct of FSB and Dovenmuehle during the initial loan transaction two years earlier.  The federal claims require a factual analysis of whether the defendants complied with TILA and RESPA.  The common law claim requires a factual analysis of whether Ms. Murphy entered into the settlement agreement because of a mutual mistake by both parties or a unilateral mistake coupled with fraud

or other inequitable conduct on the part of the defendants.  *See City of Hartford v. Chase,* 942 F.2d

130, 135 (2d Cir. 1991) ("[A]ccording to general principles of contract law, rescission based on a

mistaken understanding of the terms of an agreement is available only where the mistake is mutual,

or where one party's mistake has been caused by the other party's fraud."); Restatement (2d) of

Contracts §§ 152, 153 (1981).  Because there is no "common nucleus of operative fact" between

the federal question claims and the rescission claim, I recommend that Ms. Murphy's common law

claim be dismissed for lack of subject matter jurisdiction.

IV. CONCLUSION

In sum, I recommend that Judge Dooley not dismiss for lack of subject matter jurisdiction

Ms. Murphy's federal claims pursuant to TILA and RESPA but, nonetheless, dismiss for lack of

subject matter jurisdiction her common law claim for rescission of settlement.

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L.

Civ. R. 72.1(C).  **If the Plaintiff wishes to object to my recommendation, she must file that**

**objection with the Clerk of the Court by October 14, 2024.**  *See* Fed. R. Civ. P. 72(b)(2) (stating

that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn.

L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Ms. Murphy, will receive

the recommendation from the Clerk of the Court via mail); Fed. R. Civ. P. 6(a)(1)(C) (stating that,

when a deadline would fall on a Saturday, "the period continues to run until the end of the next

day that is not a Saturday, Sunday, or legal holiday").  If she fails to file a timely objection, her

failure "operates as a waiver of any further judicial review[.]"  *Small v. Sec'y of Health & Human*

*Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  In particular, failure to file a timely objection operates as

a waiver of the right to seek appellate review in the Court of Appeals.  *Id.*; *see also* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F.

App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge
